UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-20163-CR-WILLIAMS/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JASON GATLIN,

    Defendant.

_____/

**ORDER ON THE GOVERNMENT'S MOTION IN LIMINE**

This matter is before the Court on the United States of America's (the "Government") motion in limine to exclude inadmissible and irrelevant evidence pursuant to Federal Rules of Evidence 401, 402, 403, and 412. [D.E. 21]. Jason Gatlin ("Defendant") responded to the Government's motion on June 21, 2019. [D.E. 41]. Therefore, the Government's motion is now ripe for disposition. After careful consideration of the motion, response, relevant authority, and for the reasons discussed below, the Government's motion is **GRANTED in part** and **DENIED in part**.

## *I. BACKGROUND*

The Government charged Defendant with sex trafficking of a minor from November 26, 2018 through November 30, 2018 in violation of Title 18, United States Code Sections 1591(a)(1) and (b)(1), and production of child pornography on

November 11, 2018 in violation of Title 18, United States Code Section 2251(a).[1] The charges relate to an incident that occurred on November 30, 2018, where a 17-year-old female ("Minor A") called 911 and reported that she had been kidnapped, attacked, and had locked herself in a restroom of a gas station in Monroe County, Florida. The Monroe County Sheriff's Office responded to the call and observed that Minor A had lacerations on her lips, a large knot on the center of her forehead, and that her clothing was unkempt and ripped. Defendant fled the scene prior to the arrival of law enforcement and Minor A was transported to a local hospital.

Minor A initially told law enforcement that she met Defendant a few days earlier. However, over the course of multiple interviews, she met Defendant through another 17-year-old female ("Minor B") during the month of October 2018. Defendant and Minor B had a sexual relationship. Shortly after meeting, Minor A and Defendant began a sexual relationship in October 2018. Minor A was 17 and Defendant was 42 when they first met. Minor A stated that she and Defendant had sexual intercourse numerous times and that Defendant would regularly provide her with drugs to smoke.

Minor A further stated that, sometime during her relationship with Defendant, he spoke with her about having sex with other individuals for money. Defendant explained to Minor A how to post advertisements on the internet and rented motel rooms so that Minor A could perform commercial sex acts. Minor A would give the money earned from these acts to Defendant. During Minor A's last stay in a motel,

---

[1] Trial is set to begin in this case on July 22, 2019.

Defendant allegedly struck her in the face when she did not have enough money to give to him. Defendant then transported Minor A to Monroe County, where she continued to perform commercial sex acts while residing in a house with Defendant.

Defendant then transported Minor A to Monroe County, where she continued to perform commercial sex acts while residing in the same house as Defendant. Minor A stated that she did not want to stay with Defendant, but that Defendant would not permit her to leave. Minor A also stated that she told Defendant that she would call the police for holding her against her will if he did not return her to Miami-Dade County. Defendant then purportedly struck Minor A in the face and kicked her. Minor A stated that, at some point, she became unconscious during this assault and that Defendant eventually agreed to transport her back to Miami-Dade County. During the trip, on November 30, 2018, Minor A stated that she asked Defendant to use the bathroom. Defendant stopped at a gas station and Minor A locked herself inside the bathroom and called law enforcement. Law enforcement responded to the call and Minor A was recovered.

On December 3, 2018, the Miami-Dade Police Department arrested Defendant at a motel in Miami based on probable cause that Defendant had engaged in sex trafficking and unlawful sexual activity with a minor in violation of Florida law. During a search incident to arrest, law enforcement located an Apple iPhone in Defendant's pocket. The phone was searched pursuant to a federal search warrant. The search revealed sexually provocative images of Minor A, a video of Minor A that appeared in an online advertisement, and a video that depicted a male vaginally

3

penetrating a female with his penis without showing the individuals' faces. Law enforcement showed the video of the individuals having sex to Minor A and she confirmed that she was the female and that Defendant was the male in the video. Minor A stated that Defendant recorded the video while they were having sex using his iPhone in Monroe County.[2]

After the Government filed its complaint in this case, the United States Attorney's Office and the Federal Bureau of Investigation ("FBI") learned that, on January 25, 2019, Minor A provided a sworn recorded statement to an assistant public defender at the Miami-Dade County Public Defender's Office. In the statement, Minor A reported that she never had sexual intercourse with Defendant and that Defendant never trafficked her. During the FBI's investigation of the recantation statement, the FBI discovered that, on March 4, 2019, Minor A provided a sworn recorded statement to a detective with the Miami-Dade Police Department about her recantation. Minor A stated that she recanted her statement to law enforcement because Defendant's mother paid her money and gave her a place to stay. Minor A confirmed that the recantation that she made at the Public Defender's Office was a lie, that Defendant trafficked her, and that the two had sex.

The FBI then reviewed Defendant's recorded jail conversations with both Minor A and his mother around the time of Minor A's recantation statement, and the recordings corroborate Minor A's statement on March 4, 2019. After Minor A was

---

[2] The search of Defendant's phone further revealed images and videos of Minor B that were created between August 12, 2018 and November 18, 2018, when Minor B was 17 years old.

recovered, she was placed in a residence with other minor females. On May 1, 2019, the FBI received a report that, on April 19, 2019, law enforcement arrested Minor A for striking a 14-year-old female in her residence.

## II.   ANALYSIS

The Government seeks to limit or exclude four items at trial: (1) the prior or subsequent sexual activity of any witness or victim, (2) Minor A's battery arrest, (3) the drug or alcohol use of any witness, and (4) Minor A's mental health history. Defendant opposes the relief sought for a variety of reasons, namely because the Government failed to support its arguments with any evidence. We will discuss the arguments presented in turn.

### A.   *Prior or Subsequent Sexual Activity*

The first issue is whether any evidence of prior or subsequent sexual activity as to Minor A or any other witness should be excluded at trial. Defendant argues that the exclusion of Minor A's prior sexual history would be arbitrary and disproportionate to the purposes that Rule 412 was designed to serve because the evidence is relevant, will not confuse the jury, nor harass the victim. Defendant claims, for example, that Minor A's sexual proclivity is probative as to whether she was a victim of sex trafficking and whether she continued to engage in prostitution before or after she met Defendant. Defendant also takes issue with the Government's request to exclude the sexual history of *any witness* at trial because the Government did not articulate the relevant witnesses – making it impossible for Defendant to respond in any meaningful way.

Federal Rule of Evidence 412(a) provides that, in general, in a "criminal proceeding involving alleged sexual misconduct," "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" is inadmissible. Defendant argues, however, that this case fits within the narrow exception to the general rule because the exclusion of Minor A's sexual history "would violate the constitutional rights of the defendant." Fed. R. Evid. 412(b)(1)(C). "In determining the admissibility of a victim's other sexual behavior under Rule 412(b)(1)(C), we start with the premise that defendants have a constitutional right under the Fifth and Sixth Amendments to introduce evidence in their defense." *United States v. Pumpkin Seed*, 572 F.3d 552, 559 (8th Cir. 2009).

However, "the right to present relevant testimony is not without limitation." *Rock v. Arkansas*, 483 U.S. 44, 55 (1987). For instance, "trial judges retain wide latitude . . . to impose reasonable limits on [testimony] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Limitations on a defendant's constitutional right to present evidence are permissible unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151 (1991).

Before we consider whether to limit any evidence with respect to Minor A, the Government has provided insufficient reasons as to why there should be a blanket exclusion of any witness's sexual history. The Government argues that Federal Rule

6

of Evidence 412 imposes significant limitations on the admissibility of evidence related to a victim's sexual behavior. While that may be true, the Government fails to articulate how Rule 412 applies to each witness's sexual history. And without any clarity as to how Rule 412 applies, we have no basis to find that a blanket exclusion prohibits the topic of everyone's sexual history. Therefore, the Government's motion with respect to the wholesale exclusion of any witness's sexual history is **DENIED**.

As for the exclusion of evidence related to Minor A, Defendant suggests that Minor A's sexual history is admissible because she was an experienced prostitute, advertised her services on the internet, and held herself out to be a minor. Defendant also claims that Minor A was engaging in prostitution with other men before, during, and after she engaged in a sexual relationship with Defendant and that her sexual history is extremely probative as to whether she was the "victim" in this case. Defendant's arguments miss the mark, however, because "[d]isputes regarding whether [Minor A's] prior commercial sex work was consensual, how extensive that prior experience was, how [Minor A's] prior experienced compared to [the] experience with [Defendant], and similar questions could provide fodder for days of tangential testimony." *United States v. Maynes*, 880 F.3d 110, 115 (4th Cir. 2018). "Indeed, allowing such testimony [runs] the risk that the focus of the trial would shift from [Defendant's] activity," to Minor A's prior life. *Id.*

We are therefore convinced that the past sexual history of Minor A is only of marginal relevance to the primary issues presented in this case – which are whether Defendant employed force, threats of force, coercion, or any combination of these to

7

cause Minor A to commit commercial sex acts. And while Defendant is persistent that he only seeks to inquire as to whether Minor A was a victim, an inquiry into Minor A's prior sexual history will only lead to a fruitless fishing expedition. This is, in part, why courts have repeatedly found that a victim's sexual history is inadmissible in sex trafficking trials. *See, e.g.*, *United States v. Gemma*, 818 F.3d 23, 34 (1st Cir. 2016) (noting that evidence of a victim's prior prostitution in a § 1591(a) case is "either entirely irrelevant or of [] slight probative value in comparison to its prejudicial effect"); *United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015) (rejecting the argument that "a victim's experience in the sex industry, and knowledge of its practices, is . . . relevant to whether she was coerced or whether, on the other hand, she knew precisely what she was getting into and accepted it") (quotation marks and emphasis omitted); *United States v. Roy*, 781 F.3d 416, 420–21 (8th Cir. 2015) ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex."). Accordingly, the Government's motion to exclude Minor A's prior or subsequent sexual history is **GRANTED**.

### B.  *The Battery Arrest*

The second issue is whether any evidence related to Minor A's battery arrest should be excluded as irrelevant and unfairly prejudicial. The Government contends that it is unclear as to the status of Minor A's arrest but believes that it will be adjudicated in juvenile court as a misdemeanor. Thus, the Government believes that

8

Minor A's arrest and potential misdemeanor charge is inadmissible for three reasons.

First, the Government argues that – even if Minor A is convicted of misdemeanor battery – the conviction is inadmissible under Federal Rule of Evidence 609 because it does not constitute a felony conviction nor evidence of a dishonest act or false statement. Second, the Government posits that Minor A's battery arrest has no relevance to the facts of this case. The Government claims, for instance, that the battery arrest occurred more than four months *after* law enforcement found Minor A at the gas station in Monroe County. Third, the Government contends that there is no reason to believe that Minor A has any motive to testify on this subject because she will not receive any benefit in exchange for her testimony in this case. Accordingly, the Government concludes that any evidence of Minor A's battery arrest must be deemed inadmissible.

"Subject to the Sixth Amendment's Confrontation Clause[3], the district court has wide latitude to limit cross-examination based on concerns about, among other things, confusion of the issues or interrogation that is repetitive or only marginally relevant." *United States v. Chappell*, 307 F. App'x 275, 279-80 (11th Cir. 2009) (internal quotation marks and citation omitted). "The Confrontation Clause is violated if a criminal defendant can demonstrate that he was prohibited from engaging in otherwise appropriate cross-examination designed to show bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could

---

[3] The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., Sixth Amendment.
9

appropriately draw inferences relating to the reliability of the witness." *Id.* at 280 (internal quotation marks and citation omitted). "The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *Id.* (internal quotation marks and citation omitted). "The Sixth Amendment is satisfied if sufficient information is elicited from the witness from which the jury can adequately assess possible motive or bias." *Id.* (internal quotation marks and citation omitted).

In the same vein, Rule 609 "appl[ies] to attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a); *United States v. Preston*, 608 F.2d 626, 639 (5th Cir. 1979) ("[E]vidence of prior convictions is admitted under Rule 609(a)(1) solely for purposes of attacking credibility."). However, unlike felony convictions, misdemeanor convictions are not admissible to impeach defendants under Rule 609, unless the "elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2); *see United States v. Houston*, 481 F. App'x 188, 193 (5th Cir. 2012) (finding that the district court erred, under Rule 609, in admitting evidence of defendant's misdemeanor conviction because it did not involve dishonesty or false statement).

Here, the Government seeks to exclude Minor A's battery arrest because it has, at best, marginal relevance to the allegations presented. There is no purportedly connection between Minor A's arrest to the charges against Defendant. Undeterred,

Defendant argues that Federal Rule of Evidence 609 is not a complete bar to the admissibility of Minor A's battery arrest because it could be admissible if it constitutes an act of dishonesty or a false statement.

Defendant's contention is, in part, unpersuasive, because there is no explanation as to how Minor A's battery arrest is relevant to the facts of this case. The question of whether a pending state court charge of a government witness can be admissible has been an issue that the Eleventh Circuit has considered on several prior occasions. For example, in *Francis v. Dugger*, 908 F.2d 696, 701 (11th Cir. 1990), the Court considered the applicability of the Confrontation Clause to cross-examination questions related to a pending criminal charge. The district court did not permit the defendant to ask one of the government witnesses about an unrelated murder charge that was pending against that witness. The Eleventh Circuit determined that the main purpose of confronting a witness is to secure for the opponent the *opportunity* of cross examination and that it was appropriate for the district court to exclude that evidence at trial:

> The confrontation clause does not, however, prevent a trial court from imposing any limits on the cross-examination of a prosecution witness concerning that witness's potential bias. A trial court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Id.* at 702. Therefore, the Eleventh Circuit affirmed the lower court's decision to exclude the evidence because (1) the pending charge was only marginally relevant,

and (2) there was no evidence that the witness made a deal with the government to receive any benefit for the testimony.

Likewise, in *United States v. Allen*, 353 F. App'x 352, 355 (11th Cir. 2009), the Eleventh Circuit rejected a drug defendant's argument that the district court violated his Confrontation Clause rights by limiting cross-examination of a government witness concerning an unrelated pending charge for attempted murder. The Court found that there was no evidence indicating that the defendant was involved with the events surrounding the attempted murder, and that the charge was at best only marginally relevant to show bias. The Eleventh Circuit further observed that "questioning the witness about this charge had a very high potential for undue prejudice because it was evidence of prior criminal conduct, even though the witness had not been convicted of this conduct." *Id.* at 356. The court ultimately determined that "[b]ecause this line of questioning had minimal relevance to this case while having a very high potential for undue prejudice, the district court did not abuse its considerable discretion by limiting [the defendant's] cross-examination of that witness." *Id.*

With that being said, we cannot grant the relief requested because the Government did not provide the Court with the misdemeanor arrest affidavit or any other evidence to show that Minor A's battery is unrelated to the facts of this case.[4] If Defendant can show, for example, that the timing of the battery is somehow

---

[4] Based on the record presented, it is unclear if Minor A's conduct constitutes a felony or a misdemeanor, in part, because the Government is also uncertain on the nature of the charge. We therefore cannot make a final determination on the admissibility of Minor A's arrest without additional evidence in the record.

connected to the facts presented and that it constitutes evidence of Minor A's dishonesty, the battery arrest could theoretically be admissible. The Government, of course, maintains that Defendant cannot meet this burden and that the battery arrest is entirely irrelevant. But, without any evidence to support the Government's assertion, it would be premature to make a final determination that the pending state court charge is inadmissible. Accordingly, the Government's motion to exclude Minor A's battery arrest is **DENIED** with leave to revisit at trial.

### C. *Drug or Alcohol Use*

Next, the Government seeks to exclude any evidence of any witness's prior drug or alcohol use because it cannot be used as a general form of impeachment but only to impeach a person's "ability to perceive the underlying events and to testify lucidly at trial." *United States v. Clemons*, 32 F.3d 1504, 1511 (11th Cir. 1994) (citing *United States v. Sellers*, 906 F.2d 597 (11th Cir. 1990)). Defendant's response is that the Government's request is absurd because defense counsel must be given leeway to question the witnesses in this case. Defendant claims that the Eleventh Circuit's jury instructions have practically codified the significance of a witness's drug use and that cross examination cannot be impeded with respect to this issue.

As an initial matter, the Government's motion to exclude the drug or alcohol use of a witness was, in part, unhelpful because the Government only presented a single conclusory sentence with reference to an Eleventh Circuit case. The Government did not articulate the relevance of the case nor did it explain how it applies to the facts presented. Putting that aside, the Eleventh Circuit has long

13

adhered to the principle that a witness's drug use may not be used to attack a person's general credibility[5] because of the "extreme potential for unfair prejudice flowing from evidence of drug use . . . ." *United States v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990). Instead, the evidence must be limited to the ability to perceive underlying events and to testify lucidly at trial. *See Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir. 1987) ("A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial."); *United States v. Holman*, 680 F.2d 1340, 1353 (11th Cir. 1982) ("Limitation of specific instances of drug use to relevant periods of trial and the transaction charged in the indictment, constituted a proper exercise of judicial discretion.").

Here, it is unclear if any evidence of drug or alcohol use fits within the scope of the underlying events or the ability to testify lucidly at trial. The Government never provides any clarity in its motion nor does it articulate how it anticipated Defendant to use evidence related to drug or alcohol use. In any event, the Government's motion is **GRANTED in part** but only to the extent that any evidence of drugs or alcohol use cannot be used to attack a witness's general credibility. To the extent the Government seeks to exclude evidence relevant to the underlying events or the ability to testify lucidly at trial, the Government's motion is **DENIED** with leave to renew at trial.

---

[5] Defendant's reliance on the Eleventh Circuit's jury instructions is not controlling in light of its precedent that establishes how drug or alcohol use may be used to undermine the testimony of a witness or victim.

### D. <u>Mental Health History</u>

The final issue is whether any evidence related to a witness's mental health history should be excluded at trial.  The Government argues that a witness's mental health history is irrelevant and inadmissible, except when used to show that a witness was unable to comprehend specific events or testify truthfully.  Defendant's response is that the Government has not provided any evidence of anyone's mental health history during discovery and requests that these records be produced.  Once the items are produced, Defendant requests leave to supplement his response.

A defendant has "the right to attempt to challenge [a witness's] credibility with competent or relevant evidence of any mental defect or treatment at a time probatively related to the time period about which he was attempting to testify." *United States v. Partin*, 493 F.2d 750, 763 (5th Cir. 1974).  To be relevant, the mental health records must evince an "impairment" of the witness's "ability to comprehend, know, and correctly relate the truth." *Id.* at 762.  The Eleventh Circuit has cautioned, however, that "[n]o rule outlines with precision the severity and timing that make a witness's mental illness relevant for impeachment purposes." *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001).

Nonetheless, there is, for example, a "general principle that a diagnosis of schizophrenia or a psychosis will be relevant, unless the diagnosis is too remote in time from the events alleged in the indictment." *Id.* at 343 (citing *Partin*, 493 F.2d at 764 (witness diagnosed with schizophrenia six months prior to the defendants' Hobbs Act violations), *Greene v. Wainwright*, 634 F.2d 272, 274, 276 (5th Cir. 1981)

15

(witness was allegedly involved in "certain bizarre criminal actions . . . such as shooting out the windows of a bar," during the "same general time period as the [defendant's] marijuana sale"); *United States v. Society of Indep. Gasoline Marketers*, 624 F.2d 461, 467 (4th Cir. 1979) (witness hospitalized for schizophrenia, manic depression, and delusions during the time of defendants' Sherman Act violations); and *United States v. Lindstrom*, 698 F.2d 1154, 1164–67 (11th Cir. 1983) (witness diagnosed with paranoia and schizophrenia during the time of defendants' conspiracy)).

For witnesses with less severe mental histories, district courts are permitted greater latitude in excluding records and limiting cross-examination. *See United States v. Sasso*, 59 F.3d 341, 347-48 (2d Cir.1995) (affirming limit on cross-examination of witness who was depressed and took Prozac and Elovil shortly before the time of the defendants' firearms smuggling conspiracy); *United States v. Butt*, 955 F.2d 77, 83 (1st Cir. 1992) (affirming exclusion of records and expert testimony, and limit on cross-examination of a witness who once attempted suicide, but was never diagnosed with a mental illness); *United States v. Moore*, 923 F.2d 910, 913 (1st Cir. 1991) (affirming limit on cross-examination of witness who saw a therapist after the death of her child, and ten years prior to the embezzlement conspiracy).

Here, Defendant's response is well taken because without any mental health records for the Court to review or any clarity on how they relate to a witness's ability to comprehend specific events or testify truthfully, we cannot decide at this time whether a witness's mental health history should be admissible at trial. It appears

16

that the Government invites the Court to decide this question in the abstract as to specific mental health records. But, given the record presented, the potential severity of an individual's mental health history, and the wide discretion afforded to district courts, the Government's motion is **DENIED** with leave to renew at trial.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the Government's motion in limine [D.E. 21] is **GRANTED in part** and **DENIED in part**:

A. The Government's motion to exclude the sexual history of any witness is **DENIED** with leave to revisit at trial.

B. The Government's motion to exclude Minor A's prior or subsequent sexual history is **GRANTED**.

C. The Government's motion to exclude Minor A's battery arrest is **DENIED** with leave to revisit at trial.

D. The Government's motion to exclude evidence of drug and alcohol use is **GRANTED in part** but only to the extent that this type of evidence cannot be used to attack a witness's general credibility. To the extent the Government seeks to exclude evidence relevant to the underlying events or the ability of a witness to testify lucidly at trial, the Government's motion is **DENIED**.

E. The Government's motion to exclude any witness's mental health history is **DENIED** with leave to renew at trial.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of July, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge