UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                      CASE NO.: 19-20163-CR-SMITH

JASON GATLIN,

    Defendant.
_____/

## DEFENDANT'S OBJECTIONS TO THE PSI

    COMES NOW the Defendant JASON GATLIN by and through his undersigned counsel pursuant to Administrative Orders 95-02 and 90-26 and U.S.S.G. §6A1.3 and hereby files these, his objections to the Presentence Investigation Report (hereinafter "PSI") and as grounds therefor would state as follows:

    1.  That on September 16, 2019, this Defendant was convicted by a jury of all three counts of the superseding indictment after nearly a two-week trial.  (DE #104)  The jury found the defendant JASON GATLIN guilty of sex trafficking of a minor in reckless disregard of the fact that she was under 18 years of age[1] (Count 1) in violation of 18 U.S.C. §1591, production of child pornography (Count 2) in violation of 18 U.S.C. §2251(a) and (e) and witness tampering (Count 3) in violation of 18 U.S.C. §1512(b)(3) (DE #29)

    2.  The court has set sentencing in this matter for sentencing for **Monday, December 2, 2019** at 11:00 a.m. at the United States Courthouse in Ft. Lauderdale. (DE #112)

---

[1] The jury specifically found that the defendant did NOT use force, threats of force or coercion in finding him guilty of Count 1.

## *Factual Objections to the PSI*

a) The defendant would object to ¶5 of the PSI regarding any connotation that the defendant "fled the scene." This issue was litigated nd the court declined to give a flight instruction that was requested by the government. It is the defendant's position that the phrase "left the area" would be most appropriate"

b) The defendant would request that the last sentence of ¶6 of the PSI should be amended to conform with the trial testimony to reflect that the defendant only provided "Molly" to Minor A when she specifically requested it.

c) The defendant would request that ¶7 be amended to reflect that the defendant purchased the cellular telephone for Minor A in November 2018 but not for the purpose indicated as Minor A was employed by Chrisnel Ringaud at that time. In addition, the next sentence of the same paragraph should be amended to reflect the trial testimony and defendant's exhibit (text messages of the "victim") that it was Ringaud and not the defendant was transporting Minor A in connection with her illegal prostitution activity. Finally, as to the last sentence in ¶7 the defendant expressly denies soliciting Minor B and C for money or drugs. Minor C did not testify and Minor B testified that she is a lesbian and in her words "doesn't do guys."

d) The defendant would object to ¶9 of the PSI in that he did not rent the hotel room for the purpose listed in that paragraph.

e) The defendant would object to the first two sentences of ¶10 of the PSI and the defendant denies and has consistently denied striking Minor A at the hotel room. As the trial testimony revealed, the defendant and Minor A got into a physical altercation initiated by Minor A at the house in Ramrod Key. That is where both

parties suffered injuries.

 f) The defendant would object to ¶12 in that he did not take the photographs that appeared in Minor A's on-line prostitution advertisement. As proof the defendant would note that the photographs were not on the defendant's phone which was thoroughly reviewed on multiple occasions by law enforcement nor were they located on the victim's phone.

### *Legal Objections*

#### *Obstruction of Justice*

 For his initial objection the defendant objects to ¶18 and 30 of the PSI where the probation officer finds obstructive conduct due to the defendant' conviction as to Count 3 of the superseding indictment. The defendant would note that though the jury convicted him of Count 3, the witness tampering count, currently pending with the court is the defendant's motion for judgment of acquittal (DE #116) that takes that alleged conduct into account.

 It is the position of the defendant that due to the extraordinarily high offense level for all of his offenses when grouped together amounts to an advisory guideline of life in prison. The statutory maximum provided for under conviction of this statute is 20 years. The next effect of the two level increase would be tantamount to imposing a sentence in excess for 20 years as to the conviction on this case.

#### *Care, Custody or Supervisory Control Enhancement*

 The defendant would object to ¶24 where the probation officer increases the offense level by two (2) levels because "the minor was otherwise in the custody, care or supervisory control of the defendant . . ." A review of application note 2(A) to

§2G1.3 plainly shows the inapplicability of the guideline to the defendant's situation.

Application Note 2(A) states:

"Subsection (b)(1) is intended to have broad application and includes offenses involving a victim less than 18 years of age entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this enhancement, the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship."

Obviously this minor, a career prostitute was never "entrusted" to the defendant by anyone. The defendant would not fall into any of the above listed categories. The only relationship would be defendant-minor which clearly makes this enhancement inapplicable.

*Undue Influence*

The Defendant would next object to ¶25 where the probation officer seeks to increase the defendant's offense level by two (2) levels "(b)ecause a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct." Once again the application notes offer guidance to whether this enhancement should be applied.

According to application note 3(B):

"In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior. The voluntariness of the

minor's behavior may be compromised without prohibited sexual conduct occurring'. The commentary to this section also specifies that "the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior:"

This court should also be mindful that the last portion of the aforementioned note does contain a rebuttable presumption that the enhancement applies "(i)n a case in which a participant is at least 10 years older than the minor." The defendant who was 42 at the time of the offense would agree that such a rebuttable presumption should apply.

Once such an analysis is done, the enhancement is clearly inapplicable. In *United States v. Davis*, 924 F.3d 899 (6th Cir. 2019) the appellate court vacated and reversed a sentence where the district court inappropriately applied this enhancement. The defendant in *Davis* argued at sentencing that he had rebutted the presumption with facts that are remarkably similar to the instant case. Davis argued that he had rebutted the presumption by showing that "she had engaged in prostitution . . . before Young reached out to her," and "it was [S.S.] and her sister who reached out to Young to prostitute themselves." Thus, "she would have engaged in prostitution . . . whether or not Davis ever entered the picture." *Davis* at 903.

In the instant case, E. H. testified that she had been a working prostitute since she was 15 years of age or for more than two years prior to her meeting the defendant. During the time period of October and November 2018, the evidence showed that she and the defendant were in and out of a relationship. During these "out" periods there was nothing that dissuaded her fro continuing her prostitution activities. In addition

during the large portion of November 2018 she was clearly working for a pimp that was not the defendant. Therefore, there was no "undue influence" and the objection to this increase should be sustained.

*Use of a Computer and Commission of a Sex Act*

The Defendant would object to ¶26 and 27 as to Group One (sex trafficking of a minor) and ¶33 as to Group Two (production of child pornography). The defendant would point out that many of the enhancements in this section of the guidelines have become practically automatic in almost all cases involving sex trafficking and child pornography. While not looking to diminish the seriousness of the offense, courts and the sentencing commission have repeatedly questioned the validity of the enhancements including the enhancement for the use of a computer. In addition, as to ¶27 since the defendant is charged with sex trafficking of a minor clearly 100% of those cases will get the increase since they always involve the commission of a sexual act or sexual contact.

For example, in the PROTECT Act enacted in 2003, the five level increase for the number of images was added. The rapid development of technology in the last decade and a half since the statute's enactment has made this enhancement pretty much automatic and very much the standard. The limited capabilities of the internet back then made it common place for the images to be possessed in a hard copy format such as magazines. Now, rather than securing images from an adult bookstore or by mail order, a recipient can far exceed the threshold for the 5 level increase simply with the click of a mouse often without ever knowing the number of photos.

In this defendant's case (using the guidelines as recommended by the PSI) his

total offense level increased by four levels as to group One and two levels as to Group Two for these automatic increases which increases his offense levels and advisory guidelines (subject to other objections) to life in prison.

The same can be said for the "use of a computer" enhancement. Simply put, in almost every case, this enhancement is a foregone conclusion which renders the base offense level practically a fallacy. The almost unanimous amount of defendants that appear before this court on similar charges involve the use of a computer or a smart phone. This court would be hard pressed to recall a case that did not involve a case where a defendant possessed a non-digital image.

In *United States v. Jenkins*, 845 F.3d 181, 188-9 (2nd Cir. 2017) noted "(f)irst, we observed that the Sentencing Commission has not been able to apply its expertise but instead has increased the severity of penalties "at the direction of Congress," despite "often openly oppos[ing] these Congressionally directed changes." *Dorvee* at 184–86. Second, we noted that four of the sentencing enhancements were so "run-of-the-mill" and "all but inherent to the crime of conviction" that "[a]n ordinary first-time offender is therefore likely to qualify for a sentence of at least 168 to 210 months" based on an offense level increased from the base level of 22 to 35. Id. at 186. We emphasized that this range was likely to be unreasonable because it was "rapidly approaching the statutory maximum" for distribution of child pornography, and because the offense level failed to sufficiently distinguish between "the most dangerous offenders" who "distribute child pornography for pecuniary gain and who fall in higher criminal history categories" and those who distribute for personal, non-commercial reasons. Id. at 186–87. Also, we held that this range demonstrated "irrationality in §

2G2.2" because it was substantially more severe than for an adult "who intentionally seeks out and contacts a twelve-year-old on the internet, convinces the child to meet and to cross state lines for the meeting, and then engages in repeated sex with the child." Id. at 187.

The *Jenkins* case involved the transportation and possession of child pornography. The court found that the increase of the defendant's offense level from the base offense level of 22 to 35 was solely due to the application of "run-of-the mill" and "all-but-inherent" enhancement that the court had previously criticized. The court went onto further note that these enhancements caused Jenkins to be "treated like an offender who seduced and photographed a child and distributed the photographs and worse than one who raped a child." *Jenkins* at 189.

The court went on to cite statistical analysis from the Sentencing Commission which found that "(i)n 2014, for example, 95.9% of defendants sentenced under § 2G2.2 received the enhancement for an image of a victim under the age of 12, 84.5% for an image of sadistic or masochistic conduct or other forms of violence, 79.3% for an offense involving 600 or more images, and 95.0% for the use of a computer. See U.S. Sentencing Comm'n, Use of Guidelines and Specific Offense Characteristics (Offender Based), Fiscal Year 2014 42–43.

Ultimately the Second Circuit found that *Jenkins* jail sentence and 25 year probationary sentence were substantively unreasonable and vacated both portions of the sentence. Therefore with regard to the sentence to be imposed in this case, the court should vary downward from the applicable guideline range to account for these arbitrary and automatic enhancements.

### *Group Two*

*Sadistic or Masochistic Conduct*

The defendant would object to the four level increase suggested in ¶34 of the PSI in that the one selfie that is involved in the "production" offense was neither "sadistic or masochistic" nor did involve an infant or toddler. As a reminder the "victim" was just shy of her 18th birthday. Without going into a graphic description of the one "selfie" that was admitted into evidence, it clearly did not involve "sadistic or masochistic" as required by this guideline.

*Care, Custody or Supervisory Control*

The defendant would object to ¶35 of the PSI in that E. H. was never in the care, custody or control of the defendant. As a side note there are two ways that this enhancement can be satisfied. The first is that a defendant can be the parent, relative or legal guardian of the minor involved in the offense. There is absolutely no evidence that the defendant fits into this category, therefore, this objection will concentrate on the second possible way to qualify for this enhancement, to wit, "minor was otherwise in the custody, care, or supervisory control of the defendant."

Section 2G2.1(b)(5) provides for a two-level guideline enhancement "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." U.S.S.G. § 2G2.1(b)(5). According to § 2G2.1's commentary, this enhancement "is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently," such as "teachers, day care providers, baby-sitters, or other temporary caretakers." Id. § 2G2.1

cmt. n.3(A). The commentary further advises that courts should look to the "actual relationship that existed between the defendant and the minor" and not simply its legal status. *United States v. Mobley*, 711 Fed. Appx. 547 (11th Cir. 2017)

It is clear from the evidence at trial, the E. H. had been a prostitute since the age of 15 and it is clear that she had a pimp during the relevant time period who exercised control over her. There was no direct or indirect evidence showing that the defendant ever exercised any control over E. H. that is required by the aforementioned guideline.

### *Chapter 4 Enhancement*

Finally, the defendant would object to ¶44 and the implementation of §4B1.5(b)(1) of the guidelines in that this Defendant is clearly not a "repeat and dangerous sex offender against minors" as contemplated by the guidelines.

Section 4B1.5(b)(1) provides, in relevant part, that a five-level sentence enhancement should be applied when "the defendant engaged in a pattern of activity involving prohibited sexual conduct." USSG § 4B1.5(b)(1). Application Note 4(B)(i) to § 4B1.5(b)(1) defines "pattern of activity involving prohibited sexual conduct" for purposes of the five-level enhancement. It states that "a defendant [has] engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant [has] engaged in prohibited sexual conduct with a minor." USSG § 4B1.5 cmt. n.4(B)(I). *United States v. Fox*, 926 F.3d 1275, 1278-9 (11th Cir. 2019)

Initially, the defendant would object that there are nor multiple victims should foreclose this enhancement. However, is mindful that the Eleventh Circuit has found that this argument is squarely foreclosed by their precedent in *United States v. Fox*, 926

F.3d 1275 (11th Cir. 2019) but this argument is being made to preserve the issue for appeal. In *Fox*, the court held, consistent with their sister circuits, that the §4B1.5(b)(1) enhancement properly applies when the defendant engages in repeated prohibited sexual conduct with the same minor. *Id*. at 1278–80; see also *United States v. Pappas*, 715 F.3d 225, 229 (8th Cir. 2013); , 539 F.3d 445, 447–48 (6th Cir. 2008); *United States v. Phillips*, 431 F.3d 86, 90 n.5 (2nd Cir. 2005) See also *United States v. Harrelson*, 781 Fed. Appx. 841 (11th Cir. 2019)

Based on the totality of the circumstances in this case, the defendant does not meet the criteria for this Chapter Four enhancement.

WHEREFORE the Defendant JASON GATLIN respectfully requests this court enter an order sustaining his objections to the PSI.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record this 26th day of November 2019.

        Respectfully submitted,

        LAW OFFICES OF PHILIP R. HOROWITZ
        Attorney for Defendant GATLIN
        Suite #1910 - Two Datran Center
        9130 South Dadeland Boulevard
        Miami, Florida 33156
        Tel.: (305) 670-1915
        Fax.: (305) 670-1901
        E-Mail: *HorowitzDefense@aol.com*

        */s/ Philip R. Horowitz*
        By: PHILIP R. HOROWITZ, ESQUIRE
        Florida Bar No.: 466557